UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TIMOTHY HARDVILLE,

    Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,

    Defendant.
_____/

Civil Action No. 18-CV-12882

HON. BERNARD A. FRIEDMAN

### OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, AND REMANDING FOR FURTHER PROCEEDINGS

This matter is presently before the Court on cross motions for summary judgment [docket entries 10 and 12]. Pursuant to E.D. Mich. LR 7.1(f)(2), the Court shall decide these motions without a hearing. For the reasons stated below, the Court shall grant plaintiff's motion, deny defendant's motion, and remand the case for further proceedings.

Plaintiff has brought this action under 42 U.S.C. § 405(g) to challenge defendant's decision denying his application for social security disability insurance benefits. An Administrative Law Judge ("ALJ") held a hearing in September 2017 (Tr. 24-61) and issued a decision denying benefits in February 2018 (Tr. 9-19). This became defendant's final decision in July 2018 when the Appeals Council denied plaintiff's request for review (Tr. 1-3).

Under § 405(g), the issue before the Court is whether the ALJ's decision is supported by substantial evidence. As the Sixth Circuit has explained, the Court

> must affirm the Commissioner's findings if they are supported by substantial evidence and the Commissioner employed the proper legal standard. *White*, 572 F.3d at 281 (citing 42 U.S.C. § 405(g)); *Elam ex rel. Golay v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th

> Cir. 2003); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (internal quotation marks omitted); *see also Kyle*, 609 F.3d at 854 (quoting *Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 604 (6th Cir. 2009)). Where the Commissioner's decision is supported by substantial evidence, it must be upheld even if the record might support a contrary conclusion. *Smith v. Sec'y of Health & Human Servs.*, 893 F.2d 106, 108 (6th Cir. 1989). However, a substantiality of evidence evaluation does not permit a selective reading of the record. "Substantiality of the evidence must be based upon the record taken as a whole. Substantial evidence is not simply some evidence, or even a great deal of evidence. Rather, the substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (internal citations and quotation marks omitted).

*Brooks v. Comm'r of Soc. Sec.*, 531 F. App'x 636, 640-41 (6th Cir. 2013).

At the time of the ALJ's decision, plaintiff was 45 years old (Tr. 17, 30). He has a high school education (Tr. 30) and work experience as a prison corrections officer and field investigator (Tr. 45-46, 213). Plaintiff claims he has been disabled since September 2015 due to pain in his back, legs, and neck (Tr. 159, 218-19). The ALJ found that plaintiff's severe impairments are "degenerative disc disease in the lumbosacral spine with radiculopathy, status post discectomy and interbody fusion; degenerative disc disease in the cervical spine with radiculopathy; ulnar neuropathy of the bilateral elbows; [and] small joint effusion of the left knee" (Tr. 14).

The ALJ further found that although plaintiff cannot perform his past work, he has the residual functional capacity ("RFC") to perform

> sedentary work as defined in 20 CFR 404.1567(a) except that he is limited to occasionally climbing of stairs, crouching, crawling, kneeling, stooping, and bending; avoiding workplace hazards such as dangerous, moving machinery and unprotected heights; no climbing of ropes, ladders, or scaffolds; frequently grasping/gross

2

manipulation and fingering/fine manipulation with the bilateral upper extremities; occasionally using foot controls with the bilateral lower extremities; and, occasionally reaching overhead with the bilateral upper extremities.

(Tr. 15.) Section 404.1567(a), in turn, states:

Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

A vocational expert ("VE") testified in response to a hypothetical question that a person of plaintiff's age, education, and work experience, and who has this RFC, could perform certain unskilled, sedentary jobs as an administrative support clerk, packer, or sorter (Tr. 54). The ALJ cited this testimony as evidence that work exists in significant numbers that plaintiff could perform and concluded that he is not disabled (Tr. 18).

Having reviewed the administrative record and the parties' briefs, the Court concludes that the ALJ's decision in this matter is not supported by substantial evidence because her RFC evaluation of plaintiff is flawed. Since the hypothetical question incorporated this flawed RFC evaluation, it failed to describe plaintiff in all relevant respects and the VE's testimony given in response thereto cannot be used to carry defendant's burden to prove the existence of a significant number of jobs plaintiff is capable of performing.

The RFC evaluation is flawed for the following reasons. First, the ALJ failed to consider the side effects of plaintiff's medications. The record indicates that plaintiff takes, or at various times has taken, a number of medications, including Gabapentin (Neurontin), Meloxicam, Hydrocodone (Norco), Methocarbamol (Robaxin), Cyclobenzaprine (Flexeril), Naprosyn

3

(Naproxen), Fioricet, and Doxepin (Sinequan) (Tr. 161, 175, 180, 193, 210, 228-29, 235, 237-38, 255-56, 258, 260, 262, 269-71, 301, 304, 424, 428), many of which have known side effects. Plaintiff testified that his medications make him feel "groggy and dizzy" (Tr. 49) and that he naps daily for two to three hours due to "the combination of the medicine and being up all night" (Tr. 39). On his function and disability reports, plaintiff indicated that certain of his medications cause him drowsiness, blurred vision, dizziness, lightheadedness, nausea, and sleepiness (Tr. 175, 180, 193).

The ALJ's only comment about plaintiff's medication side effects was to note in passing that "[t]he claimant mentioned that his medications make him sleepy . . . [and] that he naps on the average once a day for 2-3 hours" (Tr. 15). She failed to acknowledge plaintiff's many medications, and she made no findings regarding the nature and severity of plaintiff's medication side effects. The ALJ's failure to make any findings as to this issue is an error requiring remand, as the Sixth Circuit has held that the ALJ must evaluate "[t]he type, dosage, effectiveness, and side effects of any medication" as part of the process of determining the extent to which side effects impair a claimant's capacity to work. *Keeton v. Comm'r of Soc. Sec.*, 583 F. App'x 515, 532 (6th Cir. 2014) (quoting 20 C.F.R. § 416.929(c)(3)(i)-(vi)). Further, hypothetical questions to vocational experts must account for medication side effects. *See White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 789-90 (6th Cir. 2009). On remand, the ALJ must determine which medications plaintiff was taking during the relevant time period; make findings as to the nature and severity of these medications' side effects, if any; adjust her findings as appropriate regarding plaintiff's RFC; and incorporate these findings in proper hypothetical questions to the VE.

Second, the RFC assessment in this matter is flawed because the ALJ failed to adequately explain why she dismissed the severity of plaintiff's cervical pain and why she gave no

4

apparent allowance for this impairment in the RFC evaluation. The ALJ acknowledged that one of plaintiff's severe impairments is "degenerative disc disease in the cervical spine with radiculopathy" (Tr. 14). And in her summary of the medical evidence, the ALJ noted that MRIs taken in April 2016 and August 2017 showed significant abnormalities in plaintiff's cervical and thoracic spine:

> On examination [in April 2016], range of motion was limited in his cervical spine and strength was diminished in the left arm. A MRI established multi-level cervical disc disease with evidence of a disc osteophyte complex at the C3-4 level and a left central disc herniation at T2-3 (Exhibit 5F).[1]
>
> \* \* \*
>
> The claimant maintained that he was still getting pain in his neck extending to his left arm in August 2017. Another cervical MRI comported with multi-level spondylotic changes with a focal disc

---

[1] The complete interpretation of this MRI states:

IMPRESSIONS:

1. There is multilevel disc disease present throughout the cervical spine as described in the body of the report.

2. The most prominent changes are noted at C3-C4 with evidence of a disc/osteophyte complex present. It causes canal and moderate bilateral neural foraminal narrowing.

3. At the bottom of the images and incompletely seen, at T2-T3, there is a left central to foraminal disc herniation with associated subarticular canal and left neural foraminal narrowing to a moderate degree.

4. Milder changes of foraminal narrowing are noted at several other levels as described.

(Tr. 284-85.)

protrusion at C5-6 abutting and flattening the ventral cord.²

(Tr. 16.) The ALJ also noted plaintiff's abnormal EMG, which was interpreted as showing "[m]ild, chronic, left C6 radiculopathy" and "[m]ild, bilateral ulnar mononeuropathies at the elbows" (Tr. 441).

While evidence in the record supports the ALJ's conclusion that plaintiff's lower back and leg pain are no longer of disabling severity,³ plaintiff's complaints of cervical pain have persisted. Beginning in April 2016, Dr. Khalil noted that plaintiff "has been having a lot of neck pain and left upper extremity radiculopathy in the left arm, forearm, thumb, index, and middle

---

² In particular, this MRI was interpreted as including the following significant findings:

> C3-C4: Spondylotic changes effacing the ventral CSF and abutting the ventral cord. Mild central canal stenosis. No cord signal changes. Uncovertebral facet arthropathy and disc osteophyte complex creates right greater than left moderate neuroforaminal stenosis.
>
> C4-C5: Tiny spondylotic ridge effacing the ventral CSF without significant central canal stenosis. Uncovertebral face arthropathy creates mild right foraminal stenosis.
>
> C5-C6: Focal left para median disc protrusion abutting and flattening the cord creating at least mild degree of central canal stenosis. No cord signal changes. Uncovertebral facet arthropathy and disc ossific complexes create moderate bilateral neuroforaminal stenosis

(Tr. 436.)

³ Plaintiff apparently suffered from significant back and leg pain beginning with the alleged disability onset date (July 2015) due to herniations at L4-L5 and L5-S1, lumbar radiculopathy, and lumber degenerative disc disease (Tr. 257). In January 2016, he underwent a "lumbar L5-S1 bilateral discectomy and fusion" (Tr. 264) that substantially reduced his back and leg pain. In April 2016, three months post-surgery, the surgeon, Dr. Khalil, noted that plaintiff's "back is doing great, no low back pain anymore. No radiculopathy in the lower extremities" (Tr. 283). In September 2016, Dr. Khalil noted that plaintiff had "complete resolution of back and leg symptoms" (Tr. 290).

finger. He has been having some mid thoracic back pain as well" (Tr. 283). On examination, Dr. Khalil found "[p]ositive Spurling's[4] on the left, arc of motion of the cervical spine is 80% limited by pain." *Id.* Later the same month, Dr. Khalil noted that plaintiff "continues to have difficulty with daily activities due to these problems" (Tr. 294). In June 2016, Dr. Khalil noted that plaintiff "continues . . . to experience neck pain, radiating to the left upper extremity and in the C6 distribution. He has been through physical therapy with no relief so far" (Tr. 292). Dr. Khalil also noted that "[p]rior MRI scan had shown multilevel stenosis worse at C3-C4 and C5-C6." *Id.* In July 2016, Dr. Khalil noted that plaintiff "continues to have neck pain, radiating left upper extremity, left arm, forearm, thumb, index, and middle fingers. It is bothering him almost on a daily basis" (Tr. 291). In September 2016, Dr. Khalil indicated that plaintiff "has been having more and more neck symptoms. They are mid-cervical and radiating to the bilateral trapezial area" (Tr. 290). In October 2016, Dr. Khalil indicated that plaintiff "has mild neck discomfort and stiffness" (Tr. 287).

In August 2017, Drs. Pahuta and Evans saw plaintiff for "assessment of [n]eck pain with cervical radiculopathy" (Tr. 428). Plaintiff complained of "a stabbing pain in his neck and down his left upper extremity." *Id.* Plaintiff rated the pain as 8 to 9 on the 10-point scale. *Id.* On examination, plaintiff had "[n]eck flexion to 20 (limited by pain in LUE), extension to 10 (limited by pain in LUE), rotation to 20 (limited by pain in LUE)" (Tr. 430). The April 2016 MRI was read as "showing diffuse cervical spondylosis with significant foraminal stenosis at C6" (Tr. 430). Based on EMG testing, plaintiff was diagnosed with cervical radiculopathy at C6 and ulnar neuropathy of

---

[4] The Spurling test is an "evaluation for cervical nerve root impingement in which the patient extends the neck and rotates and laterally bends the head toward the symptomatic side; an axial compression force is then applied by the examiner through the top of the patient's head; the test is considered positive when the maneuver elicits the typical radicular arm pain." *Stedmans Medical Dictionary* 908330.

7

both upper extremities (Tr. 439). And, as noted, the August 2017 MRI of plaintiff's cervical spine showed moderate neuroforaminal stenosis at C3-C4 and C5-C6 (Tr. 436).

After acknowledging much of this evidence, the ALJ dismissed plaintiff's neck pain with the following explanation: "As to his left-sided symptoms, objective studies verified only mild cases of cervical radiculopathy and ulnar neuropathy. There were no signal changes in the spinal cord" (Tr. 16). This explanation fails for at least three reasons. First, plaintiff's "left-sided symptoms" (i.e., pain radiating into his left arm and hand/fingers) are just one aspect of plaintiff's complaints concerning his cervical pain. Plaintiff's primary complaint appears to be the pain in his neck and upper back, neither of which are addressed by the dismissal of his "left-sided symptoms." Second, the ALJ's explanation fails to show how, if at all, she considered the extensive objective evidence showing significant abnormalities in plaintiff's cervical spine, including the positive Spurling's test, the severely restricted range of motion, and the two MRIs showing stenosis at two locations. Third, the ALJ appears to have relied on her own interpretation of raw medical data ("[t]here were no signal changes in the spinal cord") in evaluating the severity of plaintiff's neck pain. The fact that the August 2017 MRI was interpreted by the reviewing physicians as showing "no abnormal cord signal" (Tr. 436) may or may not be significant in assessing the severity of plaintiff's neck pain, but neither the ALJ nor the Court possesses the medical expertise to make this judgment. On remand, the ALJ must reevaluate all of the evidence concerning plaintiff's cervical and thoracic impairments[5] and, as appropriate, revise her RFC assessment and put revised

---

[5] Under SSR 16-3P, the ALJ is required to consider various factors (in addition to the objective medical evidence) in evaluating plaintiff's symptoms, including

hypothetical questions to the VE. If the ALJ places any significance on the fact that plaintiff's August 2017 MRI was interpreted as showing "no signal changes in the spinal cord," she must obtain a physician's opinion explaining the meaning of this finding.

Plaintiff argues that the case should be remanded because the ALJ failed to explain her finding that plaintiff is not per se disabled under any of the listed impairments. The ALJ's entire explanation of this finding is that "[t]he record does not contain the requisite clinical and objective findings that would meet the musculoskeletal or neurological Listings at sections 1.00 and 11.00 respectively, . . . nor are there findings that would medically equal the requirements of these Listings, pursuant to SSR 17-2p" (Tr. 14-15). This is not an explanation but an assertion, and in many cases a remand for a reasoned explanation may be necessary. In the present case, however,

---

1. Daily activities;
2. The location, duration, frequency, and intensity of pain or other symptoms;
3. Factors that precipitate and aggravate the symptoms;
4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;
5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;
6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
7. Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

2016 WL 1119029, at *7. This Ruling also requires the ALJ to give "specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." *Id.* at * 9. On remand, the ALJ must consider the required factors and provide the required explanation.

plaintiff points to only one possibly applicable Listing (1.04A),[6] and he has not shown that he meets all of the criteria of this Listing. Plaintiff's lumbar spine disorder does not meet the durational requirement, as Dr. Khalil indicated that plaintiff's back was "doing great, no low back pain anymore, [and] [n]o radiculopathy in the lower extremities" by April 2016, less than twelve months after the alleged disability onset date (Tr. 283). And plaintiff's cervical spine disorder does not meet the criterion of "motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss," as there is no relevant evidence of atrophy.

For these reasons, the Court shall not remand the matter for a reasoned explanation as to why plaintiff is not per se disabled under Listing 1.04A, as the explanation is readily apparent. However, remand is required so that the ALJ may reevaluate plaintiff's RFC and, as appropriate, so that she may put revised hypothetical questions to the VE. Accordingly,

IT IS ORDERED that defendant's motion for summary judgment is denied.

---

[6] This Listing states:

> **Disorders of the spine 1.04** (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine); . . .

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.04(A).

IT IS FURTHER ORDERED that plaintiff's motion for summary judgment is granted and this matter is remanded for further proceedings to address the deficiencies noted above. This is a sentence four remand under § 405(g).


Dated: March 6, 2019  
Detroit, Michigan

s/Bernard A. Friedman  
BERNARD A. FRIEDMAN  
SENIOR UNITED STATES DISTRICT JUDGE